ROBERT L. CROOKE et al., Appellants, *v.* COUNTY OF KINGS, Respondent.

ROBERT L. CROOKE et al., Appellants, *v.* JOHN D. PRINCE, Respondent.

| 97 | 421 |
| 113 | 169 |
| 97 | 421 |
| 124 | 75 |
| 97 | 421 |
| 127 | 538 |
| 97 | 421 |
| 131 | 401 |
| 97 | 421 |
| 141 | 21 |
| 141 | 505 |
| 97 | 421 |
| 147 | 109 |
| 97 | 421 |
| 154 | 325 |

The statute of uses and trusts (1 R. S. 728, § 55) does not require a trust to be limited, as to its duration, upon the lives of beneficiaries alone ; it permits rents and profits to be received and held for the benefit of any number of persons during their lives, or for "a shorter time;" and, under the statute against perpetuities (1 R. S. 723, § 15), it is immaterial whether the two designated lives, beyond which the power of alienation may not be suspended, are strangers or beneficiaries.

A devise, therefore, in trust to receive and apply rents and profits during the lives of more than two beneficiaries, but terminable in any event upon the expiration of the lives of not more than two persons who are strangers to the trust, meets the requirements of both statutes. (RAPALLO, J., dissenting.)

Accordingly *held* (RAPALLO, J., dissenting), where a devise was to a trustee, during his life, to receive the rents and profits and apply them at his discretion to the support and education of the children of the testatrix, nine in number, with remainder to them, that the devise was valid.

*It seems*, that a trust in real estate is not rendered invalid by the fact that it is made subject to a power of sale given to the trustee or the *cestui que trust*, the exercise of which will terminate the trust. (EARL, J.)

The will of C., executed in 1845, devised certain real estate to a trustee for the benefit of M., a married daughter of the testatrix, during her life, with the expressed intention that the same should not be subject to,

or liable for, any of her husband's debts, and that in no event should, he have any estate or interest therein. Said devise, however, was declared to be upon the condition " and subject to the power and authority " of M. to dispose of said real estate "by grant or devise." In case she failed so to dispose of it the remainder was given to the children of M. living at her decease. *Held* (RAPALLO, J., dissenting), that if the two provisions, one creating a trust and the other conferring power to grant or devise, should be deemed so inconsistent and irreconcilable that both cannot stand, the trust must yield to the power; but that the power may, and should be understood as relating only to the remainder, and to operate solely upon that; and so, that both provisions were valid and operative.

In 1855 M. procured a conveyance to herself of the trust estate under the act of 1849 (Chap. 375, Laws of 1849). She died without having conveyed the same, but leaving a will, by which she devised all her real estate to her husband during his life, in trust, to receive the rents and profits and apply them, in his discretion, to the support and education of their children, with remainder to them in fee. The trustee, however, was empowered to sell and convey the real estate, " either in fee or lesser estate," the consideration received to be invested and disposed of for the benefit of the children in the same manner as provided for in relation to the original estate. *Held* (RAPALLO and MILLER, JJ., dissenting), that this was not simply a delegation of the power to convey, given M. by her mother's will, but was a full and complete disposition of the whole estate by will as authorized.

*It seems*, that even if the provision could be construed as simply a delegation of the power to convey, it is valid; that such power is general and beneficial, having in it no element of trust and confidence, and so may be delegated.

*Ingram* v. *Ingram* (2 Atk. 88); *Bergen* v. *Duff* (4 Johns. Ch. 368), distinguished.

Also *held*, that the power granted by the will of M. " was not invalidated by the fact that the donee was authorized to sell not only the fee but " a lesser estate." 1st. If the power authorized the creation of a third life estate, this was alienable at the moment of its creation, and so did not work an unlawful suspension of the power of alienation. 2d. If three successive life estates preceding the remainder were inadmissible, the only effect would be the destruction of the last. 3d. The "lesser estate" might be for the life of the trustee, and as thus a lawful estate might be created, it was not to be assumed that an unlawful one was intended to be authorized.

*Root* v. *Stuyvesant* (18 Wend. 257), questioned.

(Argued June 3, 1883 ; reargument ordered November 27, 1883 ; reargued April 4, 1884 ; decided December 2, 1884.)

APPEAL from judgment of the General Term of the Supreme Court, in the second judicial department, entered upon an order made May 10, 1882, which affirmed a judgment in favor of defendant, entered upon a decision of the court on trial by the court without a jury.

This was an action of ejectment.

Susan Catin is the common source of title.   She died in 1845, seized of the premises, leaving a will, the material portion of which is as follows :

"*Second.* I give, devise and bequeath unto Robert L. Crooke of the city of New York, his heirs, executors or administrators, all my property and estate whatsoever, both real and personal, in trust, nevertheless, for the following uses and purposes, viz. :

"To receive the rents and profits, and income of the real estate, and the interest and income of the personal estate, and apply the same to the use of my beloved daughter, Margaret Crooke, the wife of Philip S. Crooke, during her life, to be paid to her in person, or upon her written order, and to be for her sole use and benefit, and not to be subject to or liable for any of his debts, or any claim of his creditors, my intention being that in no event shall the said Philip S. Crooke have any title, estate or interest in my said property, either as tenant by the curtesy or otherwise, nor shall any creditor of his, at any time, have any claim upon my said estate hereby devised, or the rent, issues, profits, interest or income thereof, either before or after the same shall have been paid over to my said daughter by said trustee.

"And I do further order and direct and declare that my property and estate hereby devised to the said Robert L. Crooke, in trust as aforesaid, is upon the further condition, and shall be subject to the power and authority of my said daughter Margaret Crooke, to dispose of all and every part and parcel thereof, both real and personal (the real estate in fee simple), by grant or devise, notwithstanding her marriage, and during such marriage and without the consent of her said husband ; and in case my said daughter shall not dispose of said estate

by grant during her life or by devise at her death, then I order and direct, and my will is that all my estate, or such or so much thereof as may remain undisposed of by my said daughter, Margaret Crooke, as aforesaid, shall vest in, and become the absolute property and seizin of such children as she shall have living at her decease, to be equally divided between such children, the real estate in fee-simple, to them and their heirs forever."

In 1855, Margaret Crooke instituted proceedings under chapter 375, Laws of 1849, which resulted in a conveyance to her by the trustee of the premises in question named in her mother's will. Said Margaret did not dispose of said premises by grant; she died in 1858, leaving nine children her surviving, and leaving a will containing the following provisions:

" First, after all my lawful debts are paid and discharged, I give and bequeath unto my husband, Philip S. Crooke, all my property and estate, real and personal, during his life, in trust, to receive the rents and profits and income thereof, and apply the same to the education, support and maintenance of my children, in his discretion, and after his death then the said property and estate shall be and remain the property and estate of my said children and their heirs forever and absolutely, the real estate in fee-simple, the personalty absolutely.

" And I hereby further authorize and empower my said husband, Philip S. Crooke, at any time after my death and during his life, to sell and convey any and all my said estate, both real and personal, the real estate either in fee or lesser estate, and to execute good and proper deeds or other conveyances in the law therefor, and to receive the consideration therefor, and to invest and dispose of the same for the benefit of my children in the same manner and to the like effect and with the like trust as provided above."

The trustee named in said will, as such, sold and conveyed the premises in question, and defendant claims under such conveyance.

The plaintiffs are the children and heirs at law of said Margaret Crooke, who claim as remaindermen under the will of their grandmother.

*George F. Comstock* for appellants.  The creation, construction and execution of powers are to be governed by the statute of uses and trusts alone.  (*Cutting* v. *Cutting*, 86 N. Y. 522.) It may be the subject of a general power to sell, convey or devise.  (*Moore* v. *Little*, 41 N. Y. 66 ; *Woodgate* v. *Fleet*, 44 id. 2; *Ham* v. *Van Orden*, 84 id. 257 ; 1 R. S. 725, § 35 ; 86 N. Y. 536.)  The trust created by the will of Mrs. Catin was simply, purely and wholly to receive rents and profits, for a whole life, so that any alienation by the trustee during that life would be in contravention of the trust and manifestly void. (*Douglass* v. *Cruger*, 80 N. Y. 15 ; *Brigg* v. *Davis*, 20 id. 15.) Under our statute lands held in trust to receive and apply rents and profits are, during the existence of the trust, inalienable. (*Goodill* v. *Brigham*, Bos. & P. 195 ; Touchstone, 129, 131 ; 14, 15 Law Lib. [N. S.] 131 ; 4 Kent's Com., marg. p. 131 ; *Stukley* v. *Butler*, Hobart, 300, No. 168 ; 4 Cruise's Dig. 273 ; *DePuyster* v. *Michael*, 6 N. Y. 493 ; 2 Prest. on Titles, 193.)  In construing wills, courts should lean to such a construction as reconciles the different parts and reject a construction which leads to a contradiction.  (*Wager* v. *Wager*, 1 Serg. & R. 374; 10 Bac. Abr. 535 ; Shep. Abr., part 11, p. 11, voc. Test. ; *Whitmore* v. *Velawney*, 6 Ves. 128, 132; *Jones* v. *Colbert*, 8 id. 39.)  General and beneficial powers create an authority merely and confer no title, property or interest on the donee.  (1 R. S. 728, § 74 ; *Cutting* v. *Cutting*, 86 N. Y. 522, 528, 537 ; *Bain* v. *Matthew*, 54 id. 663 ; *In re Harveys*, L. R., 13 Ch. Div. 216 ; *Johnson* v. *Cushing*, 15 N. H. 298.) The powers called absolute in our statute have their prototype in the English common law.  But in our codification these prototypes are all represented in our statute creating and defining absolute powers ; they, therefore, have no other existence, because they are abolished except as thus codified.  (1 Chance on Powers, 45, §§ 121, 128 ; 3 Leonard, 71 ; Cruise's Dig., tit. 38 ; Code, 13, § 5 ; 6 Greenl. 316 ; *Stevens* v. *Winship*, 1 Pick. 318; 4 Kent's Com. 535 ; Bac. Abr., 6 L. & DevG. 90 [Phila. ed. 1856] ; 1 Roper on Legacies, 642, 644; 1 Jarman on Wills, 863 ; *Stewart* v. *Walker*, 72 Me. 145 ; *Anderson* v.

*Dawson,* 15 Ves. 532; *Bradley* v. *Wescott,* 13 id. 445; *Jackson* v. *Robins,* 16 Johns. 537; 1 Salk. 239; 1 P. Williams, 148; 2 Cox, 396; 10 Ves. 307; 2 Wilson,  ; 1 Sugd. on Powers [3d Am. ed. from 9th London ed.], 120; *Smith* v. *Bell,* 6 Peters, 68; *Burleigh* v. *Clough,* 52 N. H. 267; *Ayer* v. *Ayer,* 128 Mass. 575; *White* v. *Hight,* L. R., 12 Ch. Div. 751.) The limitation over to the plaintiffs in the will of Mrs. Catin was a vested remainder in fee, which must be divested, or else the title is now in the plaintiffs. (1 R. S. [1st ed.] 723, § 13; 2 Wash. on Real Estate, 552; id. 588; 1 Ferne on Rem. 314, 315; *Doe* v. *Perryn,* 3 Term R. 484; *Moore* v. *Weaver,* 16 Gray, 307; *Doe* v. *Provost,* 4 Johns. 61; 2 Williams on Ex. [6th Am. ed.] 1342; *Minnig* v. *Batdorff,* 5 Penn. St. 503; *Kinsey* v. *Lardner,* 15 Serg. & R. 196; *Roberts* v. *Bunker,* 4 Dana [Ky.], 573; *Allen* v. *Van Meter,* 1 Metc. [Ky.] 264; *Lorillard* v. *Costar,* 5 Paige, 186; *Hawley* v. *James,* 16 Wend. 139; 2 Sugd. on Powers [3d Am. ed.], 2; *Doe* v. *Martin,* 4 Term R. 39; *Baker* v. *Lorillard,* 4 Comst. 265.) Mrs. Crooke's power to devise was not unrestricted as to objects whom she could select from the whole human race, including herself. (*Bristow* v. *Warde,* 2 Ves. 386.) The trust estate in Mrs. Crooke's will was created for the life of Mr. Crooke, the trustee, and not during the life of the beneficiary, or for any shorter time, and was, therefore, void. (*Marshall* v. *Downing,* 23 N. Y. 366; *Selden* v. *Vermilya,* 3 Comst. 536; *Hawley* v. *James,* 16 Wend. 61.) The trust life estate could not inure as a power under the statute, because it does not permit a void trust to take effect as a power, except where such trust has been limited, "for a purpose not enumerated" by the statute among the permitted trusts. (*Hawley* v. *James,* 16 Wend. 174; *Brewster* v. *Stryker,* 2 Comst. 19; *Leggett* v. *Perkins,* id. 297; *Tobias* v. *Ketchum,* 32 N. Y. 319; *Bennett* v. *Garlock,* 79 id. 302; *Bailey* v. *Bailey,* 28 Hun, 608; *Garvey* v. *McDevitt,* 72 N. Y. 562; *Robert* v. *Corning,* 89 id. 237; *Morse* v. *Morse,* 85 id. 53; *Costar* v. *Lorillard,* 14 Wend. 324.) If by possibility the power of alienation may be suspended by the execution of the power for more than two lives,

then the power is void. (*Jennings* v. *Jennings*, 7 N. Y. 547; *Amory* v. *Lord*, 9 id. 404; *Beekman* v. *Bonsor*, 23 id. 314; *Hawley* v. *James*, 16 Wend. 61; *Root* v. *Stuyvesant*, 18 id. 257; *Schettler* v. *Smith*, 41 N. Y. 328; *Knox* v. *Jones*, 47 id. 396.) The statute of powers nowhere authorizes the donee of a power or any one but the owner of lands to grant a power of any kind. (*Selden* v. *Vermilya*, 3 Comst. 536; *Root* v. *Stuyvesant*, 18 Wend. 284.) The trust to receive the proceeds of sales and dispose of them for the support, education and maintenance of the children during his, the trustee's life, in his discretion, is an inseparable part of the power to sell, and it is condemned by the statute as much as is the life estate first given to him. (*Costar* v. *Lorillard*, 14 Wend. 325; *Irving* v. *DeKay*, 9 Paige, 521; *Parks* v. *Parks*, id. 106; *Darling* v. *Rogers*, 22 Wend. 494.) If in executing a power an estate is limited to take effect after a previous one, and the limitation as to such prior estate is void, the time of the subsequent one will be accelerated and be as if the void limitation had not been made at all. (2 Washb. 668; Perkins, 567, 569; Touchstone, 535; *Juel* v. *Jacobs*, L. R., 3 Ch. Div. 703; Cro. Eliz. 423; *Yeaton* v. *Roberts*, 8 Foster, 459; *Adams* v. *Gillispie*, 2 Jones' Eq. 44; 9 id. 277; *Lainson* v. *Lainson*, 18 Beav. 1; *Williams* v. *Goodtitle*, 5 M. & Ry. 757; *Bullock* v. *Bennett*, Eng. L. & Eq. 563; *Phillips* v. *Ackers*, 9 Cl. & Fin. 583; *Finch* v. *Lane*, L. R., 10 Eq. Cas. 583; *Matthias* v. *Hammond*, 6 Rich. Eq. 121.) Nothing can be created or appointed by the donee of an original power, or by any person under authority from the donee, which is not within such original power. (4 Kent's Com. 337; *Braybrook* v. *Att'y-Gen'l*, 9 H. L. Cas. 150; 1 Sugden on Powers [3d Am. ed.], 242; *Hotchkiss* v. *Elting*, 36 Barb. 38; *Barber* v. *Cary*, 11 N. Y. 397; *Heitzel* v. *Barber*, 69 id. 12; *Jackson* v. *Davenport*, 18 Johns. 295; *Wickcashom* v. *Savage*, 58 Penn. St.   .) A power of sale is always personal and untransferable when not precisely confined in the modes of its execution. (*Ingram* v. *Ingram*, 2 Atkins, 88; *Beekman* v. *Bonsor*, 23 N. Y. 293; *Newton* v. *Bronson*, 13 id. 587; *Bergen* v. *Duff*, 4 Johns. Ch. 368; Sugden on Powers

[3d Am. ed.], 214; *Conklin* v. *Edgerton's Adm'rs,* 21 Wend.
436; *Smith* v. *Garsey,* 2 Dev. & Batt. 42 ; *Cole* v. *Wand,* 16
Ves. 27; *Haslem* v. *Bean,* 2 Taylor [N. C.] 279 ; *Chambers* v.
*Tulans,* 1 Stock. 146 ; *Dominic* v. *Michael,* 4 Sandf. 375 ;
*Cutting* v. *Cutting,* 86 N. Y. 522 ; *Mott* v. *Ackerman,* 92 id.
553.) By the limitation over in Mrs. Catin's will, her grand-
children, the plaintiffs in this case, were to have the estate
absolutely at the decease of their mother in the event of the
non-execution of the original power, and they cannot be de-
prived of it by a transfer of the same power to be executed
after the death of Mrs. Crooke. (1 Sugden on Powers [2d
Am. ed.], 214 ; 2 Atkins, 88 ; 2 Ves. Jr. 336 ; 2 Hare, 200 ;
3 East, 310 ; 1 Ves. Sen. 413; *Cole* v. *Wade,* 16 Ves. Jr. 27.)
The primary devise by Mrs. Catin to Robert L. Crooke in
trust, considered apart from the power of disposition, created
a mere life estate for the life of Mrs. P. S. Crooke, the bene-
ficiary, and this life estate was not enlarged by the subsequent
conveyance of the trustee to her. (Stat. of Trusts, § 65 ; *Bridge*
v. *Davis,* 20 N. Y. 15 ; *Jackson* v. *Edwards,* 22 Wend. 509 ;
*Fosdick* v. *Cornell,* 1 Johns. 440 ; *Anderson* v. *Jackson,* 16 id.
382; *Chrystie* v. *Phyfe,* 19 N. Y. 345 ; *Gilman* v. *Reding-
ton,* 24 id. 16 ; *Terry* v. *Wiggins,* 47 id. 518.) The future es-
tates of the children came into a legal and potential existence
at the moment of the decease of the testatrix, Mrs. Catin. (1 R.
S. 725, § 35 ; *Ham* v. *Van Orden,* 84 N. Y. 257.) To the
direction that the real estate must be disposed of in fee-simple,
it is impossible to impute any other meaning than the one
which in itself it expresses. (*Brown* v. *Lyon,* 16 N. Y.
420; Jarm. on Wills, rule 17, pp. 427, 429 ; 6 Durnf.
& East, 353 ; Wigram on Wills [O'Hara], 24 ; 5 Ves. 401.)
At common law a fee, whether absolute or not, cannot exist
in a married woman having issue without the rights of
the husband as the necessary incidents of that tenure. (1
Bishop on Married Women, 473, 583.) All the powers
of sale, of appointment or apportionment, distribution or
application to the objects thereof are discretionary in their
very nature, unless all the circumstances of their execution

are defined in the powers as to leave no room for discretion. (*Conklin* v. *Edgerton's Adm'rs*, 21 Wend. 436; 1 Sugd. on Powers, 214; *Smith* v. *Garcey*, 2 Dev. & Batt. Ch. 42; *Person* v. *Garrison*, 1 McLean, 197; *Cole* v. *Wade*, 16 Ves. 27; *Haslem* v. *Ream*, 2 Taylor [N. C.], 279; *Bergen* v. *Duff*, 4 Johns. Ch. 368; *Chambers* v. *Tulane*, 1 Stockt. 146; *Dominie* v. *Michael*, 4 Sandf. 375; *Singleton* v. *Scott*, 11 Iowa, 589.) Whoever claims title under the execution of a power must show that its creation and existence are justified by the statute in some of its classifications and definitions. The estate devised to Philip S. Crooke during his life, in trust, was a perpetuity. (*Shelter* v. *Smith*, 41 N. Y. 328; *Knox* v. *Jones*, 47 id. 390; Lewis on Perpetuities, 560, 561; *Hawley* v. *James*, 16 Wend. 61, 120; *Jennings* v. *Jennings*, 7 N. Y. 547; *Armory* v. *Lord*, 9 id. 404, 415; *Savage* v. *Burnham*, 17 id. 561; 4 Kent's Com. 337; 1 Sugd. [3d Am. ed.] 242; *Costar* v. *Lorillard*, 14 Wend. 324; 9 H. of L. Cas. 150, 166; *Knox* v. *Jones*, 47 N. Y. 396; *Hawley* v. *James*, 16 Wend. 61; *Shelter* v. *Smith*, 41 N. Y. 328.)

*Winchester Britton* for respondent. The power vested in Mrs. Crooke by the will of her mother, Mrs. Catin, having been given for the sole benefit of Mrs. Crooke, unaccompanied by any trust or duty toward another, the maxim "*delegatus non potest delegare*" is not applicable. Mrs. Crooke was vested with an unrestricted power to be exercised for her own benefit exclusively. (1 R. S. 732, §§ 74, 77, 79; notes, 5 Edm. Stat. 321-2; *Crozier* v. *Crozier*, 3 D. & W. 353; *Liefe* v. *Saltingstone*, 1 Mod. 289; 1 Sugden on Powers [7th Lond. 3d Am. ed.], chap. 7, § 2, ¶ 12 [* 483]; *Keefer* v. *Schwartz*, 47 Penn. St. 503.) Under the power in question, Mrs. Crooke might have conveyed the fee. (*Perry* v. *Wiggins*, 47 N. Y. 512; *Holmes* v. *Godson*, 8 DeM. & G. 152; *Barton* v. *Barton*, 3 K. & J. 512; *Shaw* v. *Ford*, L. R., 7 Ch. Div. 669.) Section 80 of the statute of powers is an enabling and not a restrictive provision, and was enacted to enable a married woman to take and exercise such a power by an act without the concurrence of her

husband and unaffected by his marital rights. (*Strong* v. *Wilkin*, 1 Barb. Ch. 1, 13; *Fraser* v. *Warren*, id. 220, 240; *Wright* v. *Tallmadge*, 15 N. Y. 307; *Wadhams* v. *Am. H. M. Soc.*, 12 id. 415; *Leavitt* v. *Pell*, 25 id. 474; *Goodhill* v. *Brigham*, 1 Bos. & Pul. 192; *Maundrell* v. *Maundrell*, 10 Ves. 246; Sugden on Powers, chap. 2, § 6, p. 104.) The power of disposition devised to Mrs. Crooke was equivalent to a devise of the property to her in fee. (1 R. S. 733, §§ 77, 79, 85; Powell on Devises, 10; 2 R. S. 57; *Smith* v. *Edwards*, 88 N. Y. 92; *Campbell* v. *Beaumont*, Ct. of App. MS.) The intention of Mrs. Catin to vest in Mrs. Crooke the whole financial interest in the estate devised being apparent, must be carried out in accordance with the terms of the will and the rules of law. (1 R. S. 748, § 2; *Van Nostrand* v. *Moore*, 52 N. Y. 12; *Jackson* v. *Coleman*, 2 Johns. 391; *Doe* v. *Howland*, 8 Cow. 277; Jarman on Wills, chap. 33, § 4; 1 R. S. 732, §§ 82, 84, 85; *Freeborn* v. *Wagner*, 4 Keyes, 29; *DePeyster* v. *Michael*, 6 N. Y. 467; *Westervelt* v. *Gregy*, 12 id. 202; *Terry* v. *Wiggins*, 2 Lans. 274; *Ackerman* v. *Gertin*, 67 N. Y. 66; *Livingston* v. *Murray*, 68 id. 490; *Trustees of Seminary* v. *Kellogg*, 16 id. 93.) The effect of vesting the fee in Mrs. Crooke was to render ineffectual the devise in trust to Robert L. Crooke. (Jarman on Wills [5th Am. ed.], chap. 15; *Sherrat* v. *Bently*, 2 Myl. & K. 149; *Parks* v. *Parks*, 9 Paige, 107; 1 R. S. 722, § 5.) It was, therefore, though expressed, to be for the life of Mrs. Crooke an estate at will. (*Nichol* v. *Warworth*, 4 Denio, 365; *Boynton* v. *Hoyt*, 1 id. 53; *Garvey* v. *McDevitt*, 72 N. Y. 556; *McLean* v. *Macdonald*, 2 Barb. 534; *Marvin* v. *Smith*, 56 id. 600; *Hermans* v. *Burt*, 78 N. Y. 259.) The trust attempted to be created was one substantially to hold the lands for the use of the *cestui que trust*, and was at once executed by the forty-ninth section of the statute of trusts (1 R. S. 728), or by the eighty-second section of the statute of powers. (1 R. S. 732; *Veredin* v. *Slocum*, 71 N. Y. 347.) A remainder cannot be limited after a fee. (*Pells* v. *Brown*, Cro. Jac. 590; *Porter* v. *Bradley*, 3 Term R. 143; Jarman on Wills, chap. 26;

2 Washb. on Real Prop., bk. 2, chap. 4, §§ 1, 11, 12; *Daniel* v. *Thompson*, 14 B. Monr. 662; 1 R. S. 724, § 24; id., 722, § 4.) A valid trust estate cannot exist where the same person is both trustee and *cestui que trust*. (1 R. S. 728; *Selden* v. *Vermilyea*, 3 N. Y. 525.) Mrs. Crooke, after the conveyance from Robert L. Crooke, the trustee, held the fee. (1 R. S. 730, § 67; id. 729, § 62.) Her will, therefore, was not a mere exercise of a power, but a devise as owner of the fee. (1 R. S. 739, § 143; *Hetzel* v. *Barber*, 69 N. Y. 1.) The trust estate attempted to be vested in Robert L. Crooke, being subject to the power vested in Mrs. Crooke, was void in its creation. (*Wood* v. *Wood*, 5 Paige, 596; *Beck* v. *McGillis*, 9 Barb. 35.; *Hermans* v. *Burt*, 78 N. Y. 259.) As the trust estate and the power cannot co-exist, the trust is annulled and the power remains intact. (2 Blackst. 157; Coke Litt. 42; 4 Kent's Com. 125; *Bascom* v. *Albertson*, 34 N. Y. 584.) The power granted to Mrs. Crooke is a general and beneficial power, because it authorized the alienation in fee of the lands embraced therein to any alienee whatever, and no person other than Mrs. Crooke had by the terms of its creation any interest in its execution. (1 R. S. 733, §§ 77, 79; *Jennings* v. *Conboy*, 73 N. Y. 235; *Freeborn* v. *Wagner*, 49 Barb. 43; affirmed, 4 Keyes, 35; *Cutting* v. *Cutting*, 28 Hun, 64.) Being a beneficial power, no trust can be annexed to it without violating the statute of powers. (1 R. S. 734, § 94; id. 732, § 76; id. 733, § 92; *Cutting* v. *Cutting*, 86 N. Y. 530.) The word in parentheses inserted in the power, viz., "real estate in fee-simple" were not restrictive of the power. (1 Hill, 452; *Hone* v. *Van Schaick*, 20 Wend. 564; *Darling* v. *Rogers*, 22 id. 483; *Murray* v. *Riggs*, 15 Johns. 571.) If the power to dispose could not be executed so as to defeat the attempted trust estate, yet the power would operate upon the remainder. (*Rathbone* v. *Honey*, 58 N. Y. 463; *Terry* v. *Wiggins*, 47 id. 516.) The power to grant must be retained and considered for the purpose of ascertaining the intentions of the testatrix, and for this purpose it is as effectual as though it was valid. (*Van*

*Nostrand* v. *Moore*, 52 N. Y. 12; *Post* v. *Hover*, 33 id. 593.) The power being without restriction, and intended to be general and absolute, it was equivalent of the power which Mrs. Catin herself had, and is subject only to that test. The power to devise was as unrestricted as the power to grant. (*Jacques* v. *M. E. Church*, 17 Johns. 549; *Bovey* v. *Smith*, 1 Vern. 84; *Crozier* v. *Crozier*, 3 D. & W. 353; 1 Sugd. on Powers, 495; *Sparling* v. *Rockford*, L. R., 16 Ch. Div. 16; *White* v. *Wilson*, 1 Drury, 304; *Bray* v. *Bree*, 2 Clark & Finn. 453; *Phipson* v. *Turner*, 9 Sim. 227; *In re Brown's Settlement*, 10 Eq. 349; *Freeland* v. *Pierson*, 3 id. 668; *Ferries* v. *Jay*, 10 id. 550; *Drake* v. *Att'y-Gen'l*, 10 Clark & Finn. 257; *Craven* v. *Brady*, 4 Eq. 209; *Fowler* v. *Cohn*, 21 Beav. 360; *Bullock* v. *Fladgate*, 1 Ves. & Bea. 471; *Thompson* v. *Garwood*, 3 Whart. 287; *Berry* v. *Cross*, 132 Mass. 454; *Kinnan* v. *Guernsey*, 64 How. 253; *Relfer* v. *Schwartz*, 47 Penn. St. 503.) The limitation of the devise to Philip S. Crooke, being upon his own life only, there was not thereby an unlawful suspension of the power of alienation. (*Haxton* v. *Corse*, 2 Barb. Ch. 507–525; *Gilman* v. *Reddington*, 24 N. Y. 9; *Woodgate* v. *Fleet*, 64 id. 569; *Provost* v. *Provost*, 50 id. 141.) Nor was the trust invalid, because it was limited upon the life of the trustee, instead of the *cestui que trust.* (1 R. S. 728, § 55, subd. 3; Laws of 1828, 2d session, § 11, chap. 20; 1 R. S. [7th ed.] 123; §§ 15 and 16 of art. 1, R. S. 723.) In any event the trust was valid as a power in trust. (1 R. S. 729, § 58.) The statute does not, by its terms, require that the trust estate shall be limited upon lives of *cestuis que trust.* On the contrary, the trust may be for the benefit of any beneficiaries, *e. g.*, the person executing the trust. (*Haxton* v. *Corse*, 2 Barb. Ch. [6th Rev.] 506; *Butler* v. *Butler*, 3 id. 304; *Manice* v. *Manice*, 43 N. Y. 303.) The limitation need not be upon lives at all, provided the absolute power of alienation is not illegally suspended, but may be "for any shorter term." (*Hawley* v. *James*, 16 Wend. 61; *Hone* v. *Van Schaick*, 7 Paige, 221; affirmed, 20 Wend. 564.)

FINCH, J.   The primary question in this case,— deemed ir-
relevant on one side, but made to dictate the ultimate result on
the other,— respects the provision of Mrs. Catin's will, by which
she gave to Robert Crooke a trust estate for the life and for the
benefit of her daughter, Margaret, and at the same time con-
ferred upon the latter a power to grant and devise the whole
property.   The inconsistency of these two provisions; by one
of which the estate is tied up for a life-time by means of a trust,
which the trustee can neither end nor contravene, and the re-
sultant proceeds of which the beneficiary cannot transfer or
release (1 R. S. 728, §§ 60, 63, 65) ; and by the other of which
the estate, at the instant of the testatrix's death, is put within
the absolute power and control of the beneficiary as broadly and
perfectly as if she were sole owner; that inconsistency is so
obvious and radical that both parties have alike recognized and
conceded it, as have also the members of this court, whose
opinions followed a former argument of the appeal.   So far,
there is little room for doubt or hesitation ; but the inquiry
how the inconsistency is to be removed, or what are the conse-
quences which it involves, has led to very divergent theories.

The respondent argues, as a consequence of the repugnant
provisions, that one of the two must be disregarded or destroyed,
and insists that the trust shall disappear and the power be pre-
served.   Having thus eliminated the trust estate, and left in
Mrs. Crooke an absolute power of disposition by grant or devise,
it became easy, under the provisions of the statute (§§ 81–85),
to transmute her estate into a fee, and so establish the title
which passed by her will.   But this view of the case comes in
collision with the plain and clear intention of Mrs. Catin, ex-
pressed on the face of the will.   With great care and precision
she provides that Margaret's husband shall in no event " have
any title, estate or interest " in the property " either as tenant
by the curtesy, or otherwise, nor shall any creditor of his at any
time have any claim " upon the estate devised, " or the rents
issues, profits, interest or income thereof."   In this purpose
explicitly declared, the trust estate had its origin.   It was the
very means or machinery selected and framed to effect the ex-

pressed intention. While influenced by this motive, and aiming at this result, and creating the trust estate for its accomplishment, that the testatrix should immediately proceed to sweep it all away, and make her careful precautions futile, and open the estate to the interest of the husband and his creditors, by a provision whose legal effect annihilates the trust in the instant of its creation, is difficult to believe and impossible to hold. These considerations, and others more fully stated, led one member of the court to an opposite conclusion as to the effect of the inconsistent provisions. His reasons, which need not here be repeated, were serious and strong for the conclusion that the power was void while the trust remained. But that result is again confronted by a clear intention of the testatrix expressed upon the face of the will. For she framed and created the trust "upon the further condition" and "subject to" the power granted to Margaret. The trust was made the subordinate and the power the dominant creation. The trust existed by permission of the power. The latter was made the essential and master provision, and so was clothed with the right to live in preference, if one of the two must die. In this emergency and as a solvent of the difficult collision, a suggestion has been made which, at least, harmonizes the conflicting provisions, and takes away their inconsistency, leaving it unnecessary to destroy either. That suggestion is that the granting power bestowed upon Margaret must be understood to relate only to the remainder and operate solely upon that. It is our duty to harmonize and retain, so far as possible, all the provisions of the will ; to reject no words of its maker except upon imperative necessity ; and to seek for all of them some force and operation. The construction suggested is in the line of that duty. It preserves the trust, and so secures to the daughter the use of the estate for life, and puts it beyond the reach of the husband or his creditors. It preserves the granting power to the extent of the remainder, and so enables the daughter to sell subject to the trust, and realize in an emergency, or upon unproductive property, the measure of value in excess of the trust. It is in harmony with the manifest and controlling intention of Mrs. Catin to

vest in her daughter the whole beneficial interest in and owner-
ship of the property devised, so far as it could be done without
exposing it to the husband or his creditors.    The construction
seems to me  correct, and I am  content to adopt it as the  best
solution of the difficulty.

From that conclusion it follows that Mrs. Crooke did not
take under Mrs. Catin's will an absolute fee.    And this result
is inevitable because the granting  power did not cover the en-
tire fee.    In *Cutting* v. *Cutting* (86 N. Y. 536), the meaning
and construction of the absolute power of  disposition specified
in sections 81 to 85, inclusive, of the statute relating to powers,
was settled with a care and precision which leaves us at liberty
to take and depend upon the result without repetition of the
analysis which led to it.    But one of the sections relates to a
devising  power, and as that involves transmutation into a fee
only in a case where given to "a tenant for life or years,"
which is not the situation here, our attention must be confined
to the remaining four sections.    These, it was ruled, operated
only upon an absolute power of disposition, such and so broad
that it permitted the alienation of the entire fee during the
life-time of the donee.    Upon the construction to which I ac-
cede, the granting power conferred upon Mrs. Crooke was not
of that character, but limited to a transfer of the remainder
subject to the outstanding estate for her life in her trustee.
So that she took no fee under Mrs. Catin's will, and upon the
power to devise given by that will to Mrs. Crooke, and its due
execution by the latter, must depend the validity or invalidity
of the defendant's title.

As we approach the consideration of that power, we are met
by a contention of the appellant, urged now for the first time,
and so not considered in the opinions heretofore written, and
which is aimed at a total destruction of Mrs. Crooke's devise,
as contrary to the statute, and leaving the power unexecuted
and the remainder to the plaintiffs in Mrs. Catin's will to take
effect.    The will of Mrs. Crooke created both a trust and a
power; the trust for the benefit of her children, and the power
an authority to sell, substituting the proceeds as the capital of

the trust. Philip S. Crooke, the husband, was made trustee of the trust and donee of the power. To him the will gave the entire property and estate of the testatrix during his life, in trust, to apply the income to the support and education of her children in his discretion, and after his death it declared that "the said property and estate shall be and remain the property and estate of my said children and their heirs forever and absolutely." The duration of this trust was thus specially declared to be for a single life, that of the trustee. The trust estate, by the literal language of the will, was made to begin at the death of Mrs. Crooke, to continue during the trustee's life, and to end by an absolute vesting of the estate at his death. And because there were nine children who were beneficiaries, and the lives of more than two of them might end before the termination of the trust, and because the selected or standard life was not that of a beneficiary, and might continue after the last of these had died, it is contended that the trust attempted to be created was illegal and void. But the trust here is not, and the statute does not require that it shall be, limited as to its duration upon the lives of beneficiaries alone. Every such trust has three separate elements, intertwined closely, but capable of independent consideration and treatment. These are the trust property, the trust objects, and the trust term; what may be the property subjected to the trust; for whose benefit it may be created; and during what time it may continue. The statute against perpetuities deals only with the third and last element, the duration of the trust, or the lawful suspension of the power of alienation. It sets up a simple and easy standard by which to measure the permitted limit, and that is a period extending beyond not more than two lives in being at the creation of the trust. It does not dictate what lives; it does not concern itself about their selection; it does not direct that they shall be chosen from among beneficiaries; they may be those connected with the trust or total strangers to it; only, they must be "in being" when the trust is created. That is the sole restriction. Any two designated lives are made to serve merely as a standard,

or measure of duration, and for that purpose, it is not of the least consequence to the statutory intention whether such lives are those of beneficiaries or not. Any requirement of that sort must be found elsewhere. It is claimed to be found in the statute which authorizes the creation of the trust (1 R. S. 728, § 55), and which, while aiming only to prescribe the character of the trust property and dictate the trust objects, does thereby also affect the trust term. It permits rents and profits to be received and held for the benefit of any number of persons during their lives or a shorter term. Unlike the other statute it fixes no arbitrary limit of two designated lives, but leaves it to run through any number, so far as its own conditions are concerned. But it is argued that it is the inherent and necessary character of such a trust that it cannot exceed in duration the lives of the beneficiaries, and if its term is measured by some other life, that life and so the trust term may continue after the beneficiaries are dead, and no such trust is authorized to be created, but only for the lives of not more than two beneficiaries. But the inherent character of the trust, its own essential limitations, may very well form an element in the construction to be given to the language creating it. That character and those limitations are such that the trust cannot exceed in duration the lives of the beneficiaries, because upon their death its purpose is accomplished, and a trust supposes a beneficiary, and so its very creation implies necessarily, without express words, a termination at such period. If then, in creating the trust, one or two lives of persons not beneficiaries are designated as its measure of duration, it follows that such designation can never be intended to lengthen the trust beyond its possibility of existence, and that the language which confines its benefits to persons who are or may be living, sufficiently indicates an intention to end it at their deaths unless it is earlier terminated by the close of the selected life, or lives. And when in the present case the vesting of the fee was fixed at the death of the trustee, the close of the selected life, that must be read and construed in connection with the other necessary limit indicated by the language declaring the purpose of the trust, and

held to mean that the vesting is to take place at the end of the designated life, or at the period less than that marked by the earlier death of all the beneficiaries. We are not to gather, from the language of the will, the absurd and destructive intention to continue a trust beyond the limit implied by its own nature and inherent character, unless compelled to it by language which will admit of no other interpretation. A similar construction has heretofore been adjudged by this court. In *Provost* v. *Provost* (70 N. Y. 141), the trust created was to receive the rents and profits, and apply them to the use of the wife until the children, of whom there were more than two, became of age; and the period of vesting was indicated thus: "It is my will that when the children become of age the trust shall cease." The literal language of its creation exposed that trust to most of the criticism indulged in here. It was not created in terms for the life of the wife; its duration was not limited upon the life of the beneficiary alone, but in combination with the full age of the children; the wife might die before the last of the children reached twenty-one, and so the trust be prolonged beyond the beneficial life. But this court refused to accede to any such literal and rigid interpretation, and held that the trust by necessary implication was for the life of the wife unless sooner determined by the majorities of the children, and so was for the life of a person or a shorter term, and within the express permission of the statute. A construction of the same character must govern Mrs. Crooke's trust, and we must hold here, as was held there, that the duration of the trust may be measured by an event which is not the completed lives of all the beneficiaries, but which may happen earlier and reduce the trust to a "shorter term." Indeed the contrary doctrine urged upon us would make it impossible ever to create such a trust in part for the benefit of unborn persons, for if the trust must be limited as to duration upon the lives of the beneficiaries, and these lives, by the statute of perpetuities, must not exceed two and must be "in being," it follows inevitably that such trust cannot be created for the benefit of children not *in esse*. And to this logical consequence, the argu-

ment on behalf of the appellants with commendable courage marches boldly. Asserting that the execution of Mrs. Crooke's power must be treated as if written in Mrs. Catin's will; that six of the children at that date were unborn ; that a suspension dependent for its duration on lives not in being cannot be created by any limitation or condition whatever, — the argument asserts for such reason the invalidity of the trust. But this court has held differently. In *Woodgate* v. *Fleet* (64 N. Y. 569), it was said that " a trust to receive and apply the rents and profits of lands, the duration of which cannot extend beyond the lives of two designated persons in being at the time of the creation of the trust, is permitted by the statute ; and its validity is not impaired by the circumstance that during this authorized period of suspension of the power of alienation, more than two persons are to enjoy the benefit of the income, or even that some of the designated beneficiaries are not *in esse* at the time of the creation of the trust." The right thus to provide for unborn beneficiaries was also asserted in *Harrison* v. *Harrison* (36 N. Y. 546). These cases refute the doctrine of the appellants by denying its logical consequences, and it seems to me indicate its error by drawing a distinction which is more plainly disclosed in *Manice* v. *Manice* (43 N. Y. 386). There the trust was for the life of the widow, but for her benefit and that of five children. RAPALLO, J., said of it : " The trust is limited for its *duration* to the life of the widow, and as to each beneficiary the beneficial interest is for his life or a shorter term." That is, a trust dependent upon lives, as beneficial objects, need not necessarily be dependent upon the same lives for its duration. The two things are inherently different, and yet, when both enter into the constitution of the trust, they affect and modify each other, and together dictate the extreme limit of the trust. The natural term, which is the lives of all the beneficiaries, and the stipulated term, which is the close of the selected and designated lives, may either, taken separately, work out an unlawful trust ; while construed together and in combination, as they should be, they bring the trust within the requirements of the statute. The natural term alone

might make the trust last beyond the lawful extent of two lives in being. The stipulated term alone might go beyond the lives of the beneficiaries, but the two combined and made elements of the trust, in its creation, effect a lawful duration, and limit the trust to the stipulated term, unless before it is reached the natural term expires, or to the natural term unless before it is reached the stipulated term expires. Unless the language of the will creating the trust imperatively forbids, where both terms are present as elements of the creation, it must be construed to run for the natural term, except as shortened by the stipulated term ; or for the stipulated term except as shortened by the natural term. In the present case, the trust created is limited for its beneficial objects, and so for its natural term upon the nine lives of the children, which would violate the statute by an unlawful suspension; but the trouble is corrected and made harmless by the presence also of a stipulated term, the one life of the trustee, beyond which the natural term is not allowed to run, and which in turn is itself modified so that it cannot carry the trust beyond the natural term. The trust can outrun neither.

In *Haxton* v. *Corse* (2 Barb. Ch. 507), the trust to receive rents and profits was for the benefit of a group of children, but the stipulated term was for the one life of Barney Corse, who was neither trustee nor beneficiary, but a stranger to the trust, and the CHANCELLOR held it lawful and within the permission of the statute. In that case, the trust ran for the stipulated term, the life of Barney Corse, unless shortened by the natural term, the lives of the children to whom the income was payable ; while in *Provost* v. *Provost* (*supra*) the trust ran for the natural term, the life of the widow *cestui que trust* unless shortened by the stipulated term, the majorities of the children; and while again, as another variety of the trust, in *Gilman* v. *Reddington* (24 N. Y. 9), it ran for the natural term of the lives of three children, but such unlawful duration was made lawful by a stipulated term which selected out the lives of two of the three as a fixed limit which the trust should not exceed.

Still another variety of these trusts is considered in the cases

upon which the appellants rely, and which are not pertinent because they relate to trusts which had no measure of duration except the natural term alone, which consequently became the sole guide to the intended length of the trust, and stood unaffected by the corrective element of an expressed and stipulated term, bringing the duration within the lawful limit. (*Hawley* v. *James*, 16 Wend. 61; *Jennings* v. *Jennings*, 7 N. Y. 547; *Amory* v. *Lord*, 9 id. 404; *Savage* v. *Burnham*, 17 id. 561; *Downing* v. *Marshall*, 23 id. 366; *Knox* v. *Jones*, 47 id. 396.) In no one of these cases was there any restriction by the terms of the trust as created, confining its duration within the limits of two designated lives in being; and in all of them, save one, it was plainly contemplated and provided that the trust should run through all the lives of the beneficiaries as the only measure of duration; and in the one excepted case, three of the beneficiaries were corporations. It seems to me, therefore, certain, both upon principle and authority, that the trust to Philip Crooke was not void for undue suspension of the power of alienation, or lack of authority for its creation.

We are thus brought to the execution of the power by the will of Mrs. Crooke and to the question of delegated powers; a question which I consider irrelevant; and its solution immaterial. A delegated power is an authority which one person transfers to another and which in some cases that other cannot further transfer. Mrs. Crooke never transferred, or attempted to transfer, the authority which she got from Mrs. Catin, or any part or parcel of it. The power given to the daughter was to dispose of the property by will. The latter either did dispose of it or did not, but she never transferred or attempted to transfer to her husband the least atom of her derived power. She never in any manner authorized him to "dispose" of one dollar of it in the sense of that word as used in her authority. The word "dispose" is capable of a double meaning. As used by Mrs. Catin it meant one thing; as applied to Philip Crooke's discretion or power of sale, it means quite another. In the former case it meant power unrestricted to give to any ownership the entire property; as applied to

Philip Crooke's discretion it means, at the most, power to determine proportions among the owners of the ownership already given, and to substitute one form of the property so owned for another. He could not dispose of the estate or of any part of it in the first sense of the word, for others already owned the whole. He might embezzle or convert it, but he could not dispose of any portion of it in the sense of the power conferred by Mrs. Catin upon his wife. There was thus neither transfer nor attempt to transfer that power. It was incapable of delegation in its own inherent nature. It could be exercised by Mrs. Crooke, but could not be delegated whether involving trust or confidence or not. The only question is, did Mrs. Crooke herself exercise the power by her last will, for she alone could do it. If she did not do it, the plaintiffs have title; if she did do it, the defendants have title, and the sole question is whether what she did amounted to a complete disposal by her of the ownership of the whole property. For, to raise the question whether she could lawfully delegate the power is to assume that she herself did not completely execute it, but leaving it in whole or in part unexecuted, sought to provide for its execution by some one else after her death. And precisely that I understand to be the ultimate contention of the learned counsel for the appellants. He says of his adversaries: "The problem is for them to show if they can that the power to devise the estate as created by its owner could be executed by its donee, or by any one else, under a transfer from her, after she had performed her last earthly act and her soul had left its body." In other words: if she did not effectually dispose of the real estate by her will at the moment of her death, nobody else could after she was dead. And thus, since, to delegate her devising power was impossible it is needless to consider whether if it could have been done it would have been lawful or permissible. The sole point is whether she did in fact dispose of the estate, and it seems to me that question may be put in another form which paves the way to a decisive answer; and that is, were there, at the moment of her death, under her will and deriving title therefrom,

actual owners of the whole of her estate so that no part thereof was undisposed of? To ask that question is almost to answer it. Assuredly there were such owners. The life estate of the trustee and the remainder over to the children constituted and vested the entire fee. Not an atom was left undisposed of, or to go anywhere else. The trust life estate was valid, as we have already held, and we see here the full significance of the ingenious and labored attack upon it. That trust estate was valid, and with the remainder constituted a perfect devise of the whole fee. It is wholly immaterial what else Mrs. Crooke did if it was consistent with that devise and did not nullify or undo it. In the criticism upon it the first effort was to destroy the trust estate and carry down the power of sale with it. That I have sought to demonstrate was a failure. It was then said that the remainder to the children was " a sham " because of the power of sale " interjected " before it. That is hardly worthy of serious comment. If every remainder after a trust is a " sham " because the trustee has a power of changing the form of the property by a sale or a reinvestment, and so has an opportunity for fraud upon, or robbery of the beneficiaries, that amounts to an averment that every trust is a sham where it is possible for the trustee to be dishonest. It is further said that a power to dispose is not a disposition. We have already shown that the trustee's discretion was not a power to dispose but merely a control of the manner and proportions of applying a disposition completely and perfectly made. Even that discretion I think has been over-rated. In view of the language used, and the cases bearing upon its interpretation, which were quite elaborately considered and digested in *City of Portsmouth* v. *Shackford* (46 N. H. 423), I incline to the opinion that each of the nine children was entitled, during the trustee's life, to an equal share of the income, either in support and education, or in unexpended surplus, payable with the remainder, and that the sole discretion of the trustee was to determine and control how much of each child's share should go to that child in support and education, and how much accumulate for such child as unexpended surplus. The courts do not favor a con-

struction which lodges an arbitrary discretion, and Mrs. Crooke's will contains no word which necessarily imports a power in the trustee to exclude one or more of the children from the benefits of the trust. It was created for "my children," that is for all of them; not for "some" of them, or "one or more of them," or "any" of them. But however this may be, the discretion cannot be stretched to a power of disposal. That work was done. The whole estate, rents, income and profits, and entire remainder, were given completely and fully to the nine children, or as to the income to some one or more of the nine. At the instant of Mrs. Crooke's death there were owners for every dollar of it. Would it have ceased to have been a complete disposition of the income if it had been payable in terms by the trustee to such one or more of the children as he might designate? The whole legal estate for his life being in him is there then even a failure to dispose of the whole beneficial interest? Is it not true that, either by the designation, or in the absence of that, by the broad sweep of the remainder, the whole legal and beneficial interest was disposed of by force of Mrs. Crooke's will? That at her death there were under her devise actual owners of every particle of the estate? And so, to question the form of her disposition, the mode of creating that ownership, or rather of settling each owner's share in it, and her power to put that in the trustee's discretion, is simply to narrow and belittle her authority and so destroy her devise and the titles founded upon it. Her authority was as broad as an ownership. It was as if Mrs. Catin had said, dispose of this property as if you were absolute owner; whatever I as owner could do by way of devising it, that I authorize you to do; whatever would be possible, if you were actual owner, that shall be possible for you. Mrs. Catin must have understood that there were a multitude of ways in which an estate could be disposed of by will; that in so doing trusts for the benefit of children, discretion in the trustee, and powers of sale substituting proceeds in the trust were usual, common and appropriate modes of disposition by will. With that knowledge she left her free to choose any lawful disposition from among them,

and authorized it in all its details. Mrs. Crooke was empowered to dispose of the estate as if she was owner; to do that to the extent of the entire fee-simple; she did so in a lawful and appropriate manner; it was within her authority which, therefore, was well executed.

But there is a further assault upon the defendant's title. The argument advances to the power of sale conferred upon Philip S. Crooke, and pronounces it invalid, because authorizing the limitation of an illegal estate, not within the creative permission of the statute; and unduly suspending the power of alienation. The objections turn upon the provision allowing the trustee to sell in fee " or a lesser estate." It is argued that the power authorizes the creation of another life estate, and since it must date back to Mrs. Catin's will, and be treated as if therein written, we have, first, a trust estate for the life of Margaret; second, a trust estate for the life of Philip; and third, a life estate in his vendee. But the last life estate would be alienable at the moment of its creation, and add nothing to the suspension of the power of alienation. At the end of the two trust estates the life tenant and the remaindermen would have legal estates which they could at once transfer. If the three successive life estates preceding the remainder proved inadmissible, the only effect would be the destruction of the third. And that leads to another answer to the difficulty suggested. The " lesser estate" might be for the life of the trustee and so keep the suspension within two lives, or for a term of years within his own life by express stipulation; and notwithstanding *Root* v. *Stuyvesant* (18 Wend. 257) we are not to assume, when a lawful estate can be created under the power, that an unlawful one was intended to be authorized.

For these reasons my vote must be for an affirmance of the judgment with costs.

EARL, J.  It is important first to consider the meaning and legal effect of Mrs. Catin's will.

The trust for the benefit of Mrs. Crooke, but for the reasons hereinafter given, would have been valid and effectual. It

was not rendered illegal or invalid, simply because it could be terminated at her will by the exercise of the power of disposition given to her; such a trust may be created for the life of the beneficiary or for any shorter term. (1 R. S. 728, § 55, subd. 3.) The term less than life need not be a definite one. The purpose of the statute is answered if it cannot extend beyond the life. Within the limits of life, the duration of the trust may depend upon the will of the trustee or of the *cestui que trust ;* and it may be terminated by the exercise of a power of sale by the one or the other. Such a power is not necessarily repugnant to the trust, nor is the conveyance under the power any violation of the statute which makes trust estates inalienable. (*Belmont* v. *O'Brien*, 12 N. Y. 394.) A sale in such case, by the trustee, is not in contravention of the trust, and hence is not prohibited by section 65, 1 R. S. 730. A sale by the *cestui que trust* is not a sale of his beneficial interest during the trust term, and hence condemned by section 63. It is a sale of the *corpus* of the trust estate, according to the will of the creator of the trust, by which the trust is terminated.

Section 60, 1 R. S. 729, provides that "every express trust valid as such in its creation, except as herein otherwise provided, shall vest the whole estate in the trustee in law and equity, subject only to the execution of the trust." This does not mean that the entire absolute fee shall be vested in the trustee, but simply so much of the estate as is put in trust and, as is necessary to feed the trust. The remainder of the estate may remain in the creator of the trust, or may be disposed of by him in some other way or to some other person. The trustee takes a legal estate commensurate with the equitable estate, the legal estate being essential to uphold the trust. It is the whole trust estate that is vested in the trustee. An estate may be so vested subject to remainders and other future estates, and subject to the execution of a power of sale on the part of any person which may terminate the trust. But during the continuance of the trust, the entire legal estate must be vested in the trustee. (*Embury* v. *Sheldon*, 68 N. Y. 227 ; *Stevenson* v. *Lesley*, 70 id. 512.)

The same section provides that the person for whose benefit the trust is created shall take no estate or interest in the lands, but may enforce the performance of the trust in equity. This is to be construed as having reference to so much of the estate as is put in trust; such estate being vested in the trustee, the beneficiary of the trust can have no interest therein, but can simply have the right to enforce the trust. A beneficiary may, however, have a remainder, either contingent or vested, subject to the trust; and so he may have an estate that precedes the trust to be enjoyed by him before the trust shall take effect; and so, too, subject to the trust term, the beneficiary may be the donee of a power or even a trustee for some other person in a valid trust.

An owner may, within limits prescribed by the statute, do as he will with his own property. He may give it absolutely to the persons whom he desires to benefit, however improvident or incompetent they may be, or he may create a trust for their benefit. Such a trust may be for their lives or for any shorter term. It may depend upon any conceivable event that is sure to happen within life. It is conceded that a trustee may be authorized to terminate the trust; and so it must be conceded that any other person, except the beneficiary, may terminate it by the exercise of a power of sale conferred upon him. It seems to me equally clear that a power of sale may be conferred upon the beneficiary, to be exercised for the benefit of some other person, and that the trust may be terminated by the exercise of that power. The policy of the law does not require a holding that a trust can never be terminated at the will of the beneficiary. But it is the general policy of the law to allow an owner, governed by sound judgment or mere caprice, to do as he will with his own. If he wish to tie up his property for a term and thus secure the use thereof to the object of his bounty, he may put it in trust, and then, to make sure that his purpose shall not be defeated, the statute provides that the trustee cannot dispose of the trust property in contravention of the trust, and that the beneficiaries cannot assign their interests during the trust term. It was not the purpose of the statute to pro-

tect the owners of property against their own improvidence in
the disposition thereof, but to guard against the defeat of their
benevolent purpose by those for whose support and mainte-
nance provisions are made.

But the author of the trust, as we have seen, may authorize
the trustee to convey and thus terminate the trust, and I can
perceive no reason why he cannot authorize the *cestui que trust*,
to whom he could absolutely have given the property, to con-
vey the same and thus terminate the trust. If an owner
of property wishes to create a trust to exist during the will,
either of the trustee or the *cestui que trust*, I can perceive no
reason, founded in public policy, why he should not be per-
mitted to do so. Such a construction of the statute does not
interfere with their main purpose, which is said to have been to
protect infants, lunatics and other incompetent persons, because
such persons could not be the donees of a power, as a power
can be executed only by a person competent to execute a deed.

Therefore, if this power had been conferred upon Mrs.
Crooke, to be executed by her at her will for the benefit of her
children or any other person, it is entirely clear that, until the
execution of the power, it could co-exist with the trust, and that
both the power and the trust would be valid.

But here the power of disposition was to be exercised abso-
lutely for her own benefit, at her own will, and not for the
benefit of any other person whatever. Such a power is general
because it authorizes the alienation of the land in fee to any
person whatever. (1 R. S. 733, § 77.)

She was not prohibited from granting or devising the
land in fee to her husband. The purpose of the testatrix
was to cut off any right which the law might give him
in the land, and to make sure that he should not, by virtue
of the will, take or acquire any interest therein. But it
was not her purpose to limit Mrs. Crooke's control of the
land when she came to exercise the absolute power of dis-
position given to her, or to forbid its exercise in favor of her
husband. The power is also beneficial, because the donee alone
was interested in its execution (§ 79). She could execute the

power by giving, selling or devising the property, and she could thus terminate the trust when she came to exercise the power of sale. She was not bound to convey the land in fee-simple; the words in parentheses "the real estate in fee-simple" were inserted only to show the extent of the power, the quantity of the estate which she could convey and not to limit the power. She could convey less than a fee, and then the interest not conveyed would pass under the limitations over to her children. So she could convey one interest at one time and another at a subsequent time until she had conveyed the fee-simple, and thus completely executed the power. (*Cunningham* v. *Anstruther*, L. R., 2 Scotch App. 223; 4 Cruise's Dig. 245, §§ 34, 37.)

This is a power which could be conferred upon a married woman and which a married woman could execute. (*Wright* v. *Talmadge*, 15 N. Y. 307; *Leavitt* v. *Pell*, 25 id. 474.)

It is provided in the will that in case the power was not executed, the estate was, at the death of Mrs. Crooke, to vest in and become the absolute property of such children as she should leave at her death. This as to the real estate is a valid limitation over by way of an executory devise, as it would have been called at common law, or a contingent remainder, or conditional limitation under the Revised Statutes, taking effect in possession at the instant of Mrs. Crooke's decease. (1 R. S. 723, §§ 9, 10, 13; 725, §§ 24, 27; *Pell* v. *Brown*, Cro. Jac. 590; *Jackson* v. *Edwards*, 22 Wend. 498; *Chrystie* v. *Phyfe*, 19 N. Y. 345; *Gilman* v. *Reddington*, 24 id. 16; *Terry* v. *Wiggins*, 47 id. 512, 518.) At the death of Mrs. Catin the children took an expectant future estate, which was their property, alienable, descendible and devisable as such, and as such protected by the law. (1 R. S. 725, § 35; *Ham* v. *Van Orden*, 84 N. Y. 257.)

Under the power Mrs. Crooke had the right to dispose of the entire fee of the land as she willed, for her own benefit, either in her life-time or by will at her death. Hence she had an absolute power of disposition, within the meaning of section 85, 1 R. S. 733, which provides that "every power of disposition shall be deemed absolute, by means of which the grantee is

enabled in his life-time to dispose of the entire fee for his own benefit." Therefore, she took the fee of the land subject to the future expectant, contingent estate limited to her children, and so far as the will attempted to create a trust which would otherwise have been valid, it was inoperative. It is provided by section 82, 1 R. S. 733, that where an absolute "power of disposition shall be given to any person to whom no particular estate is limited, such person shall also take a fee subject to any future estate that may be limited thereon, but absolute in respect to creditors and purchasers." Here no estate in the land was by the terms of the will limited to Mrs. Crooke. (1 R. S. 729, § 60.)

It follows from these views that the trust considered by itself was a valid trust, and the power considered by itself was a valid power, and that it was no objection to the power that it was to be executed by the *cestui que trust.* But the nature of the power was such in this case that the trust could not co-exist with it, because the statute intervenes in such a case and provides that, whenever such a power has been conferred upon any person, such person shall take the fee, and thus the trust in this case is defeated. But there is no provision of law that the power in such a case shall be defeated. The statute expressly recognizes the validity of such a power, and as a consequence of it vests the fee in the donee of the power, and that provision of the statute defeats all other limitations or appointments of the property made by the donor of the power.

While as matter of fact Mrs. Catin did not intend this result, as matter of law, we must hold that she did intend it. She obviously expected that this trust and power could co-exist and that the trust would exist until Mrs. Crooke chose to exercise the power. The statute intervenes and inexorably executes the power in favor of Mrs. Crooke by vesting the title in her, and whatever consequences follow from this, we must uphold and enforce. We cannot nullify such a power, legal in form, sanctioned by the statute, because other portions of the will may be defeated by upholding it. We can conceive that an owner of land might give a fee to one person and an absolute beneficial power of sale

to another, intending that the fee should vest until the power should be exercised. In that case the power would be no more repugnant to the fee than it is here to the trust, and yet the fee would be swallowed up in the power, would be vested in the donee of the power rather than in the grantee or devisee of the fee, and thus the intention of the owner would be defeated, and under the imperative mandate of the statute the courts would have to enforce this consequence.

The will of a testator is always to some extent defeated by the operation of section 82. A testator intending to give a fee would never do it by simply giving an absolute power of sale. The statute vests the fee, and to this the will of the testator is made to conform, whatever he actually intended. Here we must take the language of this will, and give it the legal effect, and enforce the legal consequences which the statute attaches to, and imposes upon, such language. If the language were doubtful, obscure or uncertain in its meaning, then it would be permissible to look for the main purpose of the will, and to solve the difficulty by giving effect to that, disregarding such portions as appeared to be repugnant to that. Here the language is plain. The meaning is clear. There is no occasion for interpretation, and it is, therefore, idle to speculate about the main purpose of the testatrix; the statute settles the matter.

It follows from these views that Mrs. Crooke in her life-time had the fee of the land subject to the conditional limitation to her children, that at her death she possessed an absolute beneficial power of disposition, and that the interest of her children under the will of her mother was not merged in or destroyed by the power. So, we must find that there was a valid execution of the power, before it can be determined that the interest of the plaintiffs in the land was cut off by the conveyance executed by their father. They could not take the title as heirs of their mother, but only under the will of their grandmother by reason of the non-execution of the power, or through the will of their mother by the execution of the power in their favor.

We are now brought to the sole remaining question, and that

is whether the power conferred upon Mrs. Crooke was legally and effectually executed. The power was to dispose of the estate "by grant during her life, or by devise at her death." Did she not dispose of the estate by devise? She first gave all the estate to her husband to be held by him during his life, upon trust for her children. That was a valid trust. It did not unduly suspend the absolute ownership, or the power of alienation, because it was to continue no longer than his life, and it could not continue longer than the lives of the beneficiaries, and at the termination of the trust, the whole estate was to vest at once in her children. If the will had stopped here, we think it is clear that there would have been a perfect execution of the power given to Mrs. Crooke. So far as it devised the property to the children after the decease of Mr. Crooke, it is conceded that there was a precise and complete execution of the power. But she also disposed of the income during his life. He could not reserve it for his own benefit, nor devote it to any purpose but the education, support and maintenance of his children. The trust for their benefit was imperative, and could have been enforced. She disposed of the income, although in the manner of dividing and applying it, she confided a discretion to her husband.

But there is a further provision which authorizes her husband to sell the real estate, and to hold the proceeds upon the same trust. Under this power, he could not do what he willed with the proceeds, but he was to take them as trustee, and was bound to invest them, and apply the income and profits to the education, support and maintenance of her children, and at the termination of the trust, the trust estate was to vest in them. The effect then of the will was to vest the estate in him in trust for her children, with an irrevocable power to sell the real estate, under the obligation to hold the proceeds upon the same trust. At the termination of the trust, in case he did not sell, the real estate was to vest in her children; in case he did sell, the proceeds were to vest in them. Thus in any view of the case that can be taken, she "disposed of" the estate. Under the first

clause of her will, standing alone, she disposed of it; and it is equally clear, I think, that under the second clause, by giving to her husband an irrevocable power of sale, directing how the proceeds should be used, and what should finally become of them, she " disposed " of the estate, giving to the word " dispose " the meaning it has in common use. If she had owned the estate absolutely, she would not have died intestate as to any of it, leaving any of it undisposed of.

But it is claimed on behalf of the plaintiffs, that Mrs. Crooke could not authorize another to receive and dispose of the income of the property, or to grant the land, and that she could execute the power only by herself transferring the title of the land by grant or devise; and the leading maxim " *delegatus non potest delegare* " is invoked.

It is settled beyond controversy, that when the donee of a power has any discretion to exercise for the benefit of others, in the execution of the power, he must exercise such discretion, and the execution of the power cannot be delegated. But I think it is equally clear that, when there is no discretion to be exercised, when one person can execute the power as well as another, then its execution may be delegated. In such case there can be no reason for holding that the donee of the power must personally execute it.

Here there was no discretion to be exercised by Mrs. Crooke in the execution of the power. She was absolutely without control; she could even capriciously do what she willed with the land; she could give, sell, or to devise it to any human being. She could waste or expend the whole of it, and no one could call her to account, as no person had any legal interest in the execution of the power. In such a case, legally speaking, there could be no discretion to be exercised, as there was no trust for any one, and the maxim invoked, and the rules of law upon which it is based have no application.

In 4 Cruise's Digest, 257, it is said that a power of revocation and appointment cannot be delegated to another, for it is a maxim of law that " *delegatus non potest delegare ;* " but it is said that " this doctrine is, however, confined to that part of the

execution of a power in which the confidence and discretion are exercised." In 1 Sugden on Powers, 223, the learned author says: "Whenever a power is given, whether over real or personal estate, and whether the execution of it will confer the legal, or only the equitable right on the appointee, if the power repose a personal trust and confidence in the donee of it, to exercise his own judgment and discretion, he cannot refer the power to the execution of another for "*delegatus non potest delegare.*" Again he says: "It is frequently contended in practice that a donee of a power cannot execute a deed of appointment by attorney, but the cases by no means authorize this position; they merely establish that the donee cannot delegate the *confidence* and *discretion* reposed in him to another." And still further he says: "When the power is tantamount to an ownership, and does not involve any confidence or personal judgment, and no act personal to the donee is required to be performed, it may be executed by attorney in the same manner as a fee-simple may be conveyed by attorney." Here the power given to Mrs. Crooke, while it did not make her the absolute owner, enabled her to do with the estate what she willed, and hence was tantamount to ownership. In *Combe's Case* (9 Rep. 75), it is said: "If a man has authority as absolute owner of the land, then he may do it (that is exercise a power) by attorney." In Farewell on Powers, 356, the learned author says: "In considering the delegation of powers, the distinction between powers amounting to absolute ownership, powers implying personal discretion, and powers to do acts merely ministerial must be borne in mind." And at page 362: "It is clear that when a person has absolute power of appointment, he may appoint to certain persons or classes of persons in such shares as another shall nominate." In 2 Wash. on Real Property (3d ed.), 613, it is said: "If there is a general conveyance to A. to such use as he shall appoint, he may delegate the power to B. by conveying to such uses as B. shall appoint, though if the power repose personal confidence and trust in the donee to exercise his own judgment and discretion, he cannot refer the execution of

the power to another, upon the principle *delegatus non potest delegare.*"

The leading case cited in all the text-books, and by the learned counsel for the appellants, for the doctrine that the execution of a power cannot be delegated is *Ingram* v. *Ingram* (2 Atk. 88). There Ingram had a power to dispose, by deed or will, of an estate, " in such shares and proportions as he shall think fit " among the issue of his marriage, and it was held that he could not by will delegate the execution of the power to his wife. It was so decided because he had discretion and judgment which he was bound to exercise; a trust was reposed in him for the benefit of the persons designated, and he could execute the power in favor of no one else.

Without stopping now to analyze or comment upon the cases of *Bray* v. *Hammeresley* (3 Sim. 573; affirmed in the House of Lords, 2 Clark & Fin. 453), *Plupson* v. *Turner* (9 Sim. 227), and *Robson* v. *Flight* (4 De G., J. & S. 609), it seems to me that they tend strongly to uphold the contention that the execution of the power given to Mrs. Crooke could be delegated to her husband.

The case of *Bergen* v. *Duff* (4 Johns. Ch. 368) affords an apt illustration of the rule we are now considering. There a power was given to two executors to sell certain lots of land, if under the circumstances of the times, they should deem it prudent. One of the executors, having gone abroad, sent a power of attorney to his co-executor to sell the land on such terms as he should deem expedient, and it was held that an agreement for the sale entered into by one executor for himself and the other was not valid. The chancellor said : " The power given to them by the will was a personal trust and confidence to be exercised by them jointly according to their best judgment under the circumstances contemplated by the will; one executor in this case cannot commit his judgment and discretion to the other, any more than to a stranger for *delegatus non potest delegare.* The testator intended that his representatives should have the benefit of the judgment of each of the executors," and he cited among others the case of *Ingram* v. *Ingram*. If, in that case, the executors had possessed an absolute, un-

controllable power to dispose of the land for their own benefit, the chancellor's argument and reasons would have had no application.

So all the cases, without any exception, which have come under my observation, in which it has been held that the execution of a power of sale or of appointment cannot be delegated, were cases in which some trust was reposed in the donee who was to exercise, for the benefit of others, judgment and discretion in the execution of the power. Here no more confidence was reposed in Mrs. Crooke by giving her this power than would have been reposed in her if Mrs. Catin had made an absolute conveyance of the land to her. In that case, she would have expected her to dispose of it in the exercise of her discretion as she willed; and when she gave her this absolute power, she expected that she would exercise that as she willed. Here, if Mrs. Crooke had in her will given this land to her husband for life, with the right to appropriate the income thereof to his own use absolutely, and subject to his life estate had given the fee to his children, it would not be disputed that that would have been a valid execution of this power. So she could have given the land absolutely to her husband, and that would have been a valid execution of the power. In either case there would have been a disposition of the property within the meaning of Mrs. Catin's will. While she could give the income of the property absolutely to her husband, and thus execute the power, why could she not do less by authorizing him to take the proceeds and apply them, according to his discretion, to the maintenance and education of her children? Having the power absolutely to devise the land to him in fee, for his sole benefit, why could she not authorize him to sell the land and retain the proceeds for the benefit of her children? Within the limits of law, Mrs. Crooke, in disposing of the property, could carve out as many estates as she saw fit, and dispose of it in any way she saw fit, provided that the whole estate was disposed of.

I can, therefore, see no reason, no principle of law, no rule of public policy which requires us to hold that such a disposition as Mrs. Crooke made of the real estate which came from

her mother was not a valid execution of the power conferred upon her; and this is so although we suppose that during her life there was a valid outstanding trust, and that she took no estate in the land, having simply the absolute power of disposition by will. The revisers of our statutes said, that in reason and sense there is no distinction between the absolute power of disposition and the absolute ownership of property, and that it is an affront to common sense to say that a man has no property in that which he may sell when he chooses and dispose of the proceeds at his pleasure (5 Edm. Stat. at Large, 327, 328); and such was the rule of the common law. In *Bointon* v. *Ward* (2 Atk. 172) Lord HARDWICKE said in substance, that a general power of disposition is in effect property, while an absolute power of disposition by will at common law gave no estate to the donee of the power during his life; yet if he exercised the power he was so far regarded as owner at his death that the property became assets subject to the claims of his creditors in preference to those of his appointees. That rule of the common law was held to be abrogated by our statutes in *Cutting* v. *Cutting* (86 N. Y. 522); but it remained the rule in England (*In re Harveys*, L. R., 13 Ch. Div. 216); and to remove all doubts it has recently been incorporated into the statutes of that country. In *Cutting* v. *Cutting*, Gertrude Cutting gave a share of her estate to her executors in trust to receive the rents and profits thereof for the life of Fulton Cutting and apply them to his use, and upon his decease to assign and convey the share to such person or persons and in such manner as he by his last will should appoint, and in default of such appointment, to his children. Fulton Cutting by his will appointed that the estate should be conveyed to Walter L. Cutting, to be held by him upon trust for his two sons, and after their death, to their lawful issue. There Fulton Cutting had an absolute testamentary power of appointment, and to some extent he delegated the execution thereof very much as Mrs. Crooke delegated the execution of her power; and yet there was no hint by any one connected with that case that such a disposition under such a power was

not legal.   While that particular feature of the will was not then *sub judice*, yet the question actually determined could arise only upon the assumption that there had been a valid execution of the testamentary power given to Fulton Cutting.

In the case of *Spirling* v. *Rockfort* (L. R., 16 Ch. Div. 18) a testator gave to his mother a general testamentary power of appointment over real estate, provided that if she died without any will the estate was to go to E. C.   She, the mother, by will gave all her real estate, including that over which she had any power of appointment, to trustees in trust for G. G., and it was held that the execution of the power would have been valid but for the death of G. G. in her life-time, and the case was disposed of on that basis.   JESSEL, M. R., speaking of the power, said: "A general power is for almost all purposes equivalent to property."   The case of *White* v. *Wilson* (1 Drewry, 304) is a precise authority for the position I am trying to maintain.   In that case Lord Chedworth made his will and gave personalty to Mary Howard, a married woman, for life, and after her death as she should appoint, and in default of appointment, to her husband, and if she should survive him and make no appointment, then to her children.   She had three children, and by her will she appointed, after her husband's death, two thousand pounds between two of her children, and fifteen hundred pounds to the other; and she appointed the residue to her three children by name in such manner as her husband should appoint by will.   He by his will appointed five hundred pounds to one of the children, and the residue to another, giving nothing to the third; and it was held that the will of Mary Howard was a valid execution of the power given to her by the will of Lord Chedworth; but that her husband under the power she gave him had no right to exclude either of the children, and that his appointment was, therefore, bad, and that the appointment of the wife took effect in favor of the three children.   Vice-Chancellor KINDERSLY, a very able and learned equity judge, writing the opinion, said, that "the wife exercised her power, a general absolute power to appoint, at any rate, by will;" that "it is not questioned that her will was a valid exercise of the power;" that "it is not, I under-

stand, contended that Mrs. Howard had no power to delegate to her husband her power to appoint, and if it had been so contended, I should decide that the argument could not be sustained;" that "it is clear that when a person has an absolute power of appointment he may appoint to certain persons or classes of persons in such shares as another person shall nominate;" and then he said in substance, that in exercising the power she could dispose of Lord Chedworth's property, just as she could have disposed of the same property by bequest if it had been her own.

It is well settled by the authorities which I have cited, and by others to be found in the books, that Mrs. Crooke in the execution of her power could have given the property to her executor to be administered for the payment of her debts and legacies. While she could do that, what reason is there for saying that she could not dispose of it for the benefit of her children in the manner she did? Why could she not empower her husband to convert and manage as trustee what he could convert and administer as executor?

I, therefore, reach the conclusion that there is abundant authority and reason for holding that the execution of the absolute testamentary power of disposition given to Mrs. Crooke could be delegated to her husband, and I am confident that there is not a dictum or even a hint to be found, in any text-book or judicial opinion, to the contrary; and to me it is inconceivable how there could be any.

While, therefore, my sympathies are with the plaintiffs who have lost their patrimony through the improvidence of their trustee, inexorable rules of law deny them success in this action.

The foregoing opinion was written after the first argument of this case, and it covered substantially the points made in that argument on behalf of the appellants. I have seen no reason to change my conclusion and, concurring in the main, with the views of Judge FINCH, I now read the opinion as a justification of my vote at this time.

ANDREWS and DANFORTH, JJ., concur with FINCH, J.; MILLER, J., concurs with FINCH, J., as to the validity of the trust to Philip Crooke, but dissents in other respects; RAPALLO, J., dissents; RUGER, Ch. J., not voting.

Judgment affirmed.