### JESSUP v. FENTON et al.

(Supreme Court, Appellate Division, First Department. January 19, 1900.)

WILLS—CONSTRUCTION—LIFE ESTATE.
    A devise to one to "have, hold, and enjoy" during life, with "the remainder existing after his death" given in "fee simple absolute" to another, does not give the first taker power to dispose of the fee.

Appeal from special term, New York county.

Proceedings by Henry W. Jessup, as guardian of Harry M. Chandler, against David W. Fenton and others. From a judgment in favor of defendants, plaintiff appeals. Affirmed.

The following is the opinion of the court below (BEEKMAN, J.):

Samuel M. Pringle died on the 31st day of October, 1897, unmarried and childless. He left a will, dated on the 8th day of May, 1897, in and by which, after directing the payment of his debts and certain pecuniary legacies, he gave the following directions: "Third. I do hereby give, devise, and bequeath to my brother-in-law, David W. Fenton, of New York City, N. Y., all the rest, residue, and remainder of all the property, real and personal, of whatever name or nature, and wheresoever situated, of which I may be seised or possessed, or to which I may be entitled, at the time of my decease, after payment of the bequests or legacies hereinbefore set forth; to have, hold, and enjoy the same,

and to receive and use the rents, issues, and profits thereof, for and during the term of his natural life, and the remainder thereof (existing after the death of said David W. Fenton, and the consequent termination of said life estate) over in fee simple absolute to the corporation to be formed for the objects, uses, and purposes and as provided for and stated in the next succeeding paragraphs of this, my will. Fourth. I request my executors hereinafter named, or their successor or successors in interest, to incorporate, after my decease, under the laws of the state of New York, and within a period not exceeding two lives in being,—that is to say, the lives of Emma H. Lewis and Nettie Graham, named in the second paragraph of this will,—an institution or home for respectable invalid, aged, or indigent men within the state of New York, to be known as the 'Pringle Memorial Home,' in memory of my respected father, Thomas Pringle, and it is my wish that preference therein shall be given to educated and literary men (which institution may at present be incorporated under and in pursuance of section 80, chapter 559, of the Laws of 1895, constituting chapter 43 of the General Laws), and for that purpose to designate, select, and associate with themselves the necessary number of .persons to sign, make, acknowledge, and file the certificate of incorporation as required by law, and also to designate and select the first trustees of said corporation, and the number thereof, who shall also make the necessary, usual, and legal by-laws of said corporation for the management thereof, and the better carrying out of the above-named uses, purposes, and objects of said corporation, in order that the disposition of my property, made absolutely to said corporation, as set forth in the third paragraph of this will, may accomplish the greatest amount of good and benefit to those unfortunates whose welfare and happiness I have in view. I hereby appoint David W. Fenton and Richard B. Ferris to be executors of this, my last will and testament, hereby revoking all former wills by me made." The will was admitted to probate, and both executors qualified, and entered upon the performance of their duties as such. David W. Fenton, the life tenant, died on the 20th day of January, 1899, and thereafter a corporation entitled the "Pringle Memorial Home" was duly incorporated under and in pursuance of the fourth clause of the will, action having been duly taken by the surviving executor in that regard within the lives of Emma H. Lewis and Nettie Graham.

This action is brought pursuant to section 1866 of the Code of Civil Procedure by one of the heirs at law of the testator for a construction of the will, and for a judgment declaring that the devise over to the Pringle Memorial Home is void, and perpetually enjoining any party from setting up the devise, or otherwise making any claim in contravention to the determination of the court. The other heirs are made parties defendant. The basis of the action is the claim that the limitation over in favor of the home is void on the ground that it involved a possible suspension of the power of alienation of the property for a period beyond the limitation of two lives in being at the time of the death of the testator. I find myself unable to agree with this contention. The court should be slow to adopt a construction which would defeat the intention of the testator. It is to be presumed that he intended to make a legal, rather than an illegal, disposition of his property; and the evidence of a contrary intent must be clear and unavoidable to justify a construction which would overthrow his will. The sole question, then, which is to be determined here, is whether, in any event, the absolute power of alienation of the subject of the devise was suspended by the testator for a longer period than during the lives of Emma H. Lewis and Nettie Graham, the two persons named in the will within whose lives the devisee corporation must come into existence. There can be no doubt that the testator had the right to devise his property to a corporation to be formed after his decease. Tilden v. Green, 130 N. Y. 29, 28 N. E. 880, 14 L. R. A. 33. In the case cited the court says (page 47, 130 N. Y., and page 882, 28 N. E., and page 39, 14 L. R. A.): "That a valid devise or bequest may be limited to a corporation to be created after the death of the testator, provided it is called into being within the time allowed for the vesting of future estates, is not denied. Perry, Trusts, p. 372, § 736. That question was decided in Inglis v. Trustees, 3 Pet. 99, 7 L. Ed. 617, and in Burrill v. Boardman, 43 N. Y. 254." Such a devise creates a future estate, which is purely contingent in its character, and does not require dependence upon a precedent estate to support

it. The definition of future estates contained in the real property law (chapter 547, Laws 1896, § 27) is, "An estate limited to commence in possession at a future day, either without the intervention of a precedent estate, or on the determination by lapse of time or otherwise of a precedent estate created at the same time." This is simply a reproduction of a similar provision contained in the Revised Statutes, and was intended to sweep away certain artificial rules with respect to the limitation of estates no longer required by public policy, or, under modern conditions, having any support in reason. The life estate which was given by the testator to Fenton was not necessary, then, in order to support the ultimate devise to the corporation; so that, if no such estate had been created, and the only devise had been to a corporation of the description mentioned to be formed within the two designated lives, the limitation would have been a perfectly valid one. The property would have passed to the heirs at law, subject to devestment upon the happening within the prescribed period of the contingency which was to give effect to the executory devise. Nor could there be any possible question with respect to the lawfulness of the suspension of power of alienation of the property caused by the uncertainty with respect to the absolute vesting of the title. Such uncertainty under no possible conditions could exceed the limit of two lives in being at the time of the death of the testator, for it is plain that, simultaneously with the death of the longer liver of the two designated lives, there must be an absolute ownership vested either in the corporation if then in existence, or in the heirs at law if no such corporation had then been created.

Now, how does the fact that the testator has created a legal estate for life, which gives a prior right to the actual beneficial enjoyment of the property during the lifetime of the beneficiary, vary the conditions with respect to the period of vesting? In no way whatsoever. First, because this life has nothing to do with the contingency which affects the coming into being of the corporation, and the constant vesting of the estate. The testator has carefully avoided that by conditioning the devise solely upon the creation of the corporation within the lives of two persons whom he names for that purpose. If the condition is not satisfied, the gift over fails, even though the life estate devised to Fenton continues, for the period has elapsed within which by the terms of the will the limitation over must take effect. In short, the life of Fenton is not one which affects the creation of the ultimate devise, or which conditions in any way its vesting, inasmuch as a legal estate for life, such as this, is alienable at any time, and the mere fact of its existence cannot be considered upon the question of the suspension of alienation when it in no way contributes to such a condition. The test of such a suspension is whether there are persons in being who, by uniting in a conveyance of the property, can transfer an absolute title. It matters not how the title may be subdivided, or what the individual rights of the parties may be with respect to present possession. The sole question is, are their interests of such a nature that by joint action they can vest the entire title in another? In explaining the meaning of the section on this subject contained in the Revised Statutes the revisers say in their notes as follows: "Where the remainder is vested, as where the lands are given to A. for life, remainder to B. (a person in being), there is no suspension of the power of alienation, for the remainder-man and the owner of the prior estate, by uniting, may always convey the whole estate." 5 Edmonds, St. at Large, p. 304. The correctness of this view of the statute against perpetuities has never been questioned. It forms the basis of the test to which I have referred. Taking now into account the various conditions which might, from time to time, have been found to exist under the will in question, it is plain that under no possible circumstances could it operate so as to exceed the limit of two lives, which has been imposed. If within these lives the corporation come into being, all suspension of alienation ceases, either because it is then vested with an absolute fee in possession, or, if the life estate still continues, because such a fee can be then transferred by its union with the life tenant in a conveyance of the property. If, however, the corporation is not created within the two lives, as provided in the will, the limitation over fails to take effect, the devise lapses, and all suspension of the power of alienation ceases, for the heirs at law of the testator become immediately vested with an indefeasible estate in fee simple in possession, or, if the life

estate still continues, the life tenant and the heirs at law, by uniting, can at any moment transfer such a fee to another. Taking events as they actually occurred, the condition of the title at the time of the death of the testator was as follows: Fenton had a legal estate for life, and was entitled to possession of the property. The undisposed-of residuum of the title passed to the heirs at law in fee, subject to be devested by the creation of the corporation within the time prescribed therefor. Upon the decease of Fenton, which took place before the formation of the corporation, the right to the possession of the property passed to the heirs at law, and when the corporation was formed the title and right of possession in turn immediately passed to and became vested in it. It is desirable to call attention to the fact that no trust of any kind is created by the testator. This was carefully avoided; for, had the provision in favor of Fenton been thrown into the shape of a trust to pay over the income to him during his life, an entirely different question would have been presented, as a trust estate of that description, unlike an ordinary legal estate for life, is inalienable, and there would then have been a possible suspension of alienation for more than two lives that would have been fatal to the ultimate devise.

The construction which I have given to the will before me seems to be amply sustained by authority. Bailey v. Bailey, 97 N. Y. 460; Bird v. Pickford, 141 N. Y. 18, 35 N. E. 938; Corse v. Chapman, 153 N. Y. 466, 47 N. E. 812. In the case of Bailey v. Bailey supra, the testator devised to his wife a certain house and lot for her life, directing that upon her decease the same should become "a part of the residue of his estate, and be disposed of as hereinafter provided." In a subsequent clause he devised his residuary estate to his executor, in trust to receive the rents, income, and interest arising therefrom, and to divide the same into four parts, and to pay one of said parts to his brother Ward, another to his sister, Roselia, another to his brother Lewis, and another to his nephew William and his nieces Anna and Sarah, during the natural lives of Thomas Bailey and Webster Mabie. The will made it plain in its subsequent provisions that the continuance of the trust was limited solely on the two lives last mentioned. Upon the termination of the trust the estate was devised in fee to the brothers, sister, nephew, and nieces above mentioned. It was claimed that as to the house and lot devised to the widow for life there was an illegal suspension of the power of alienation,—a view which the court declined to adopt. At page 470, Judge Miller, delivering the opinion of the court, says: "In regard to the devise of the house and lot, we think there was no illegal suspension of the power of alienation. By the fifth clause of the will the use and income of the house and lot were given and devised to the testator's wife during her natural life, and at her death the house and lot became part of the residuum, which was disposed of as afterwards provided in the will. No trust was created during the life of the wife, and she had the absolute right to dispose of her interest in the house and lot during that period. The power of alienation is, therefore, not suspended during her life. While she had the right to enjoy the use and income of it, she also had the right to sell her interest in the same, if she so wished, and upon her death it passed, under the sixth clause, to the executor, in trust during the lives named, and upon their termination as provided in the seventh clause of the will. It is insisted that the title to the house and lot did not vest until the death of the three persons,—the widow, Thomas Bailey, and Webster Mabie,—and hence there was an illegal suspension of the power of alienation, and the devise was void. The gift of the use and income was equivalent to a devise of the land itself during the life of the widow, and she had a legal title, and was entitled to possession of the same." The court also held that a trust such as was created by the testator was a valid one, and was to be measured with respect to its duration by the limiting lives expressly designated for that purpose, and not by the lives of the beneficiaries. In the case of Bird v. Pickford, supra, the testator devised his estate, real and personal, to his executors, "in trust, nevertheless, to invest, and keep the same invested, and divide the net income arising therefrom equally among my said daughter-in-law, Ophelia Baltz, and my said cousins, Rachel and Addie Van Gilder, the survivor or survivors of them, during their natural lives." Immediately following was this provision: "Fourthly. If my said cousins, Rachel and Addie Van Gilder, should die before

my said daughter-in-law, Ophelia Baltz, then, in that event, I give and devise the corpus of said trust estate to the said Ophelia Baltz, her heirs and assigns, forever; but if my said daughter-in-law, Ophelia Baltz, should die before my said cousins, Rachel and Addie Van Gilder, then, and in that event, I give and devise the corpus of said trust estate to such person or persons as my said daughter-in-law, Ophelia Baltz, may designate in her last will and testament." The court held that the two clauses must be read together, and that it was plain that the estate could not be tied up longer than during the lives of the two cousins, and that there was no illegal suspension of the power of alienation. At page 20, 141 N. Y., and page 939, 35 N. E., the court says: "It is not sufficient to condemn these clauses that the absolute power of ownership and of alienation may be suspended for three lives, or for many lives, provided that such suspension be bounded by two designated lives in being at the death of the testator;" citing Crooke v. Kings Co., 97 N. Y. 421; Bailey v. Bailey, Id. 460. The judgment of the general term was reversed. 71 Hun, 142, 25 N. Y. Supp. 46. In the case of Corse v. Chapman, supra, the testator gave a legal estate for life to his widow in a certain piece of real estate, and devised all the residue of his estate to his executors, to divide the same into eight equal parts, being one share for the use of each one of his eight children, and to pay over to each the net income of his or her share for life. As each child died, its share was devised absolutely to his or her lawful issue, the testator stating that he intended to include issue born after his death. He further provided that, if any of his children died without lawful issue, then the share so set apart for the use of such child should be divided and allotted into as many parts or shares as there might be children of his then living, and that the same should be deemed added to said shares proportionately, severally, and respectively, and the rents and income therefrom "added and paid to his said several and respective surviving children during his or her life." The contention was that there was a possible suspension of the power of alienation of the parcel which had been devised to the widow for life for more than two lives in being at the death of the testator, the life of the widow being counted. While it was conceded that the devise in trust did involve a possible suspension for two lives, the court held that this limit was not exceeded, saying (page 473, 153 N. Y., and page 814, 47 N. E.) that the life estate had nothing to do with the trusts created by the will, and was alienable at any time by the widow; citing Bailey v. Bailey, supra. These decisions certainly seem to settle the law applicable to the construction of this will conclusively against the contention of the plaintiff. The devise to the Pringle Memorial Home was, therefore, a valid one, and the title to the property in question is now vested in it in fee-simple absolute.

Judgment is ordered accordingly. Notice decision and judgment for settlement.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

Henry W. Jessup, for appellant.
Nelson Zabriskie, for respondents.

BARRETT, J. It would be multiplying words to add anything to the general discussion of the main question involved in this case contained in the clear and able opinion of Mr. Justice BEEKMAN at special term. The only criticism which the appellant makes upon the learned judge's conclusion, to which a sufficient answer is not found in the opinion itself, is that the estate given to Fenton was something more than the usual life estate; that the property was given to him absolutely for life, with power to use the corpus as well as the income. It is difficult to perceive the force of this suggestion upon the underlying question. If the absolute power of disposition was annexed to Fenton's life estate, then the fee itself was alienable

by him; and, if not so annexed, he could alien the life estate, and that only. The question whether the future estate suspended the absolute power of alienation for more than the two specified lives is unaffected by either consideration. We think, however, that the appellant's counsel proceeds upon an inaccurate view of the language of the will conferring this life estate. No express power of disposition of the fee during his life is given to Fenton, nor does the language used confer such a power by implication. The devise is to Fenton, "to have, hold, and enjoy" the property for and during the term of his natural life, and the remainder existing after his death is given in fee-simple absolute to the corporation to be formed. This language does not bring the case within the rule laid down in the cases of Terry v. Wiggins, 47 N. Y. 512, Thomas v. Wolford, 49 Hun, 145, 1 N. Y. Supp. 610, and Leggett v. Firth, 132 N. Y. 7, 29 N. E. 950. In Terry v. Wiggins there was a devise of the lands to the testator's wife for her own personal use, with power to sell or otherwise dispose of the property should she require it, or deem it expedient, with remainder over at her death to a certain religious society. It was held that the wife took an estate for life, with power during the continuance of her life estate to defeat the remainder by a sale of the subject-matter of the devise. In Thomas v. Wolford the devise was to the testator's wife for life, and at her death the property, *should there be any left*, was to be divided among the children or their heirs. It was held that the words italicized indicated a clear intention that the widow should have the power of disposal of the corpus of the estate. Similar words were held in Leggett v. Firth to confer by necessary implication a power of disposition. In all these cases, however, it was distinctly held that the power of disposition annexed to the life estate did not operate to enlarge the latter to a fee, and that the limitation over was valid, and took effect as a valid remainder in fee, subject to the exercise of the power. It is evident that the construction here given by the appellant to the clause of the will in question is unwarranted. The language used imports enjoyment and disposition of the life estate, and nothing more. The power of disposition of the fee is not to be lightly implied; certainly not from language entirely consistent with special reference to the life estate. That intention cannot be inferred from such a mere formal expression as the "remainder existing after the death" of the life tenant, following the devise to the latter "to have, hold, and enjoy" during the term of his natural life, especially as the remainder is in terms "in fee-simple absolute" to the corporation to be formed.

The appellant's argument calls for no further consideration. The appeal is without merit, and the judgment should be affirmed, with costs, for these reasons, and upon the opinion below. All concur.